UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 21-CR-586 (JPO) |
| -v- | |
| YUSHANE CAMPBELL,<br>                              Defendant. | OPINION AND ORDER<br>FOLLOWING *FATICO* HEARING |

J. PAUL OETKEN, District Judge:

Defendant Yushane Campbell pleaded guilty to one count of possessing ammunition after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).  The parties dispute whether the cross-reference enhancement under Section 2K2.1(c)(1)(A) of the Sentencing Guidelines applies in this case.  The Government contends that Campbell's actions constituted attempted second-degree murder, while Campbell argues that they do not.  (*See* ECF Nos. 17, 18.)  Accordingly, this Court held a *Fatico* hearing on August 31, 2022.  (*See* ECF No. 22.)  The parties then submitted post-hearing letter briefs.  (*See* ECF Nos. 24, 30, 31.)  Having reviewed the hearing testimony and the parties' submissions, the Court is now prepared to rule on this issue.

## I.    Legal Standards

The Government bears the burden of proving the applicability of an enhancement under the Sentencing Guidelines, which must be established by a preponderance of the evidence.  *See United States v. Spurgeon*, 117 F.3d 641, 643 (2d Cir. 1997); *United States v. Jones*, 900 F.2d 512, 521 (2d Cir. 1990).

Under the Guidelines, if a defendant "used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," Section 2K2.1(c)(1)(A) provides that Section 2X1.1 applies.  Section 2X1.1, in

turn, states that the offense level associated with the other offense should apply if it is greater than the offense of conviction. The application notes to Section 2X1.1 state that attempted second-degree murder is expressly covered by U.S.S.G. § 2A2.1.

"Because the law pertaining to self-defense is a matter of federal common law," it is "appropriate to look to state court decisions for guidance" on the issue of self-defense. *United States v. Melhuish*, 6 F.4th 380, 396-97 (2d Cir. 2021).

Under New York law, a person may justifiably use deadly physical force if he reasonably believes that another person is using or is about to use deadly physical force upon him, provided that the person was not the initial aggressor and could not retreat with complete personal safety. N.Y.P.L. § 35.15. "Generally, the force permitted is related to the degree of force reasonably believed necessary to repel various threats." *Matter of Y.K.*, 87 N.Y.2d 430, 433 (1996). When justification is in issue, a factfinder must first determine if the defendant was the initial aggressor. *People v. Petty*, 7 N.Y.3d 277, 285 (2006). If the answer to this question is yes, then a justification defense is not available to the defendant unless he withdraws from the encounter, effectively communicates that withdrawal, and the other person persists in continuing the incident. *Id.* (citing N.Y.P.L. § 35.15(2)(a)). If the answer to this question is no, the factfinder must determine whether the defendant's conduct was reasonable. *Id.* (citing *People v. Goetz*, 68 N.Y.2d 96, 106 (1986)). "The 'initial aggressor' is the first person who uses or threatens the imminent use of physical force in a given encounter." *People v. Brown*, 33 N.Y.3d 316, 321 (2019).

## II.   Discussion

The Court finds the following facts by a preponderance of the evidence, based on the hearing testimony, the video surveillance, and the other exhibits.

On the morning of April 26, 2021, Campbell was walking on the sidewalk along White Plains Road. A vehicle was parked on the street, with occupants Jeremy Lambert on the driver's side and a passenger (P-1) on the passenger side. As Campbell walked past the vehicle, P-1 exited the vehicle and approached Campbell. Lambert exited the driver's side of the vehicle almost immediately after P-1 exited. As P-1 approached Campbell, Campbell lifted his arm, holding a firearm and pointing it at P-1. P-1 stepped back in reaction to Campbell's brandishing of the firearm, while Lambert, standing in the street next to his vehicle, pulled out his own firearm and pointed it at Campbell. Campbell ran up the street and ducked between cars. Campbell and Lambert engaged in a shootout, each ducking and weaving between cars. It is unclear whether Campbell or Lambert fired the first shot. Campbell was shot in the upper left leg. Campbell then entered a store. Lambert and P-1 drove away.

Private investigator Nelson Lassalle testified regarding statements made by Campbell's friend (F-1) regarding certain events that took place some weeks before the April 26, 2021 shootout. According to F-1, Campbell and F-1 had made a derogatory remark to a woman named "J" in F-1's building. Some days later, Campbell told F-1 that "J" had spat on Campbell and that Campbell had put his hands on her. F-1 subsequently went home one day to find "J" and her mother banging on his apartment door and asking about Campbell's whereabouts. After F-1 told "J" and her mother that Campbell did not live there, seven to nine individuals got out of a vehicle and beat F-1, breaking his jaw. F-1 required surgery to repair his jaw. The injuries from the assault are corroborated by hospital records dated March 29, 2021. F-1 did not identify the attackers, but he reported that he saw the same vehicle in his neighborhood every morning after the attack. F-1 told Campbell about the attack and warned him to be careful because the attackers might want to try to kill him.

3

The Court finds by a preponderance of the evidence that Campbell was the initial aggressor under New York law. The New York Court of Appeals made clear in *Brown* that "the imminent threat to use a gun against another is, necessarily, a threat of deadly physical force. The first person to make such an imminent threat is, therefore, the initial aggressor with respect to deadly physical force." 33 N.Y.3d at 322. Because the Court finds that Campbell was the first person to brandish his firearm and point it at P-1 and Lambert, Campbell was the initial aggressor.

Campbell argues, with some force, that he acted out of fear of being attacked and possibly killed by unknown assailants who had brutally assaulted his friend — while looking for Campbell — a month earlier. To be sure, the New York Court of Appeals has held repeatedly that evidence of prior threats from another person may be relevant in showing that that person was the initial aggressor, even where the threats are not communicated to the defendant. *Petty*, 7 N.Y.3d at 285. Indeed, the Court credits the evidence about Campbell's fear of an attack, given the earlier attack on his friend.

In the end, however, evidence of prior threats does not establish, *ipso facto*, that the threat-maker was the initial aggressor; rather, evidence of prior threats is simply relevant evidence to be considered along with all the other evidence regarding who the initial aggressor was at the time in question. *See id.*; *Petty v. Connolly*, No. 07-CV-6090, 2011 WL 990161, at *13-14 (S.D.N.Y. March 22, 2011), *report and recommendation adopted*, 2011 WL 3611207 (S.D.N.Y. Aug. 15, 2011). And here, the evidence suggesting that Lambert, as opposed to Campbell, was the initial aggressor at the moment of their interaction is too attenuated to support Campbell's theory. Although Campbell had a generalized fear of an attack, there is no evidence that he knew the identity of the individuals in the vehicle or what they intended to do. It was

Campbell who brandished his firearm at the moment when P-1 began approaching him.  In this situation, where Campbell had not been imminently threatened with death or serious bodily injury, Campbell was the initial aggressor because he was "[t]he first person to make . . . an imminent threat" of deadly force in the encounter.  *Brown*, 33 N.Y.3d at 322.

The New York Court of Appeals' decision in *Petty* is instructive in this regard.  Although the court held that the victim's prior threats of violence against the defendant in the weeks before the shooting were relevant to a determination of who the initial aggressor was, the court focused on the circumstances of the parties' encounter in making that ultimate determination.  The court thus easily concluded that the victim's prior threats did not overcome the evidence that the defendant was the initial aggressor *in the actual encounter*, because, among other things, the victim "did not say anything to or make a threatening gesture towards defendant."  *Petty*, 7 N.Y.3d at 285.  *See also Williams v. Chappius*, No. 16-CV-8329, 2018 WL 7133267, at *9 (S.D.N.Y. Nov 16, 2018), *report and recommendation adopted*, 2019 WL 330630 (S.D.N.Y. Jan. 25, 2019); *Brown*, 33 N.Y.3d at 321-22.

Campbell does not contend that he withdrew from the encounter and effectively communicated such withdrawal.  It follows that a justification defense is unavailable to him.  *See Petty*, 7 N.Y.3d at 285 (citing N.Y.P.L. § 35.15(2)(a)).

Although it is a closer question, the Court also finds it more likely than not that Campbell could have (and knew he could have) reasonably retreated instead of prolonging the shootout. When Lambert displayed his firearm, Campbell began fleeing quickly, and apparently successfully.  Neither Lambert nor P-1 immediately pursued him, and he likely could have continued running to safety rather than ducking between parked cars to return fire.

**III.    Conclusion**

Because the Court finds by a preponderance of the evidence that Campbell was the initial aggressor and could have retreated to safety, he is not entitled to claim self-defense. Accordingly, the Court finds that the cross-reference enhancement for attempted second-degree murder under Section 2K2.1(c)(1)(A) of the Sentencing Guidelines is applicable.

The Probation Department is directed to prepare an updated Presentence Report and the parties shall confer regarding a proposed schedule for sentencing submissions and a sentencing hearing.

SO ORDERED.

Dated:  December 29, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge